In the
 Missouri Court of Appeals
 Western District
 SUZANNE STEINBACH, )
 )
 Appellant, ) WD84502
 )
 v. ) OPINION FILED: November 2, 2021
 )
 MAXION WHEELS SEDALIA LLC, )
 )
 Respondent. )

 Appeal from the Circuit Court of Pettis County, Missouri
 The Honorable Robert L. Koffman, Judge

 Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Mark D. Pfeiffer,
 Judge and James E. Welsh, Senior Judge

 Suzanne Steinbach ("Steinbach") appeals from the trial court's entry of summary

judgment in favor of Maxion Wheels Sedalia LLC ("Maxion Wheels"). Steinbach asserts

that the entry of summary judgment was inappropriate because, as a matter of law,

Steinbach did not split a single claim of discrimination by filing two suits against Maxion

Wheels in that each suit concerned different time periods during which alleged

discrimination, harassment, and retaliation took place. Steinbach alternatively argues that

Maxion Wheels acquiesced to the claim being split, and that the trial court abused its
discretion in denying Steinbach's motion for leave to file a reply to an amended answer out

of time to assert the affirmative avoidance of acquiescence. Because the trial court abused

its discretion in denying Steinbach's motion for leave to file a reply to an amended answer

out of time, we reverse the grant of summary judgment and remand this matter for further

proceedings.

 Factual and Procedural History1

 Steinbach filed a charge of discrimination with the Missouri Commission on Human

Rights ("MCHR") on February 2, 2018 ("February 2018 charge of discrimination"). In the

February 2018 charge of discrimination, Steinbach alleged that from approximately

September 1, 2017, to the date of filing, she suffered discrimination on the basis of her sex

and retaliation by her employer, Maxion Wheels. In particular, Steinbach alleged that,

shortly after she reported ongoing sexual harassment and a hostile work environment to

human resources in late September 2017, Steinbach's work was rejected though properly

performed, Steinbach was assigned more physically demanding tasks than her typical job

duties despite recently returning from medical leave, and Steinbach was transferred to a

less desirable shift.

 The MCHR issued Steinbach a right-to-sue letter on August 13, 2018. Steinbach

filed a petition against Maxion Wheels in the circuit court of Pettis County on October 24,

2018 ("October 2018 Petition"), asserting a claim of discrimination and harassment on the

basis of sex for the period from May 2016 through September 2017, and a claim of

 1
 When reviewing the trial court's entry of summary judgment, "[w]e view the record in the light most
favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences
from the record." Traweek v. Smith, 607 S.W.3d 779, 784 (Mo. App. W.D. 2020).

 2
retaliation, continued discrimination, and harassment for the period from September 2017

through January 2018 ("instant case"). Maxion Wheels filed its answer ("Answer") on

December 17, 2018, denying Steinbach's allegations and asserting various affirmative

defenses.

 On October 25, 2018, the day after the October 2018 Petition was filed, Steinbach

filed a second charge of discrimination with the MCHR ("October 2018 charge of

discrimination"). Steinbach's October 2018 charge of discrimination "attached and

incorporated [the February 2018 charge of discrimination] fully . . . by reference." The

October 2018 charge of discrimination alleged that when the February 2018 charge of

discrimination was filed, Steinbach was beginning a medical leave of absence, and that

when she returned to work on June 6, 2018, she was assigned strenuous work that was not

typical work for her job title and that was designed to aggravate her injuries. The October

2018 charge of discrimination alleged that, because the work was too strenuous, she took

additional time off to recover, and was informed in August 2018 that she would be

discharged from her employment effective August 30, 2018, if she could not return to work.

Steinbach alleged the change in her work duties and her discharge were in retaliation for

earlier complaints of discrimination.

 The MCHR issued Steinbach a second right-to-sue letter on April 24, 2019.

Steinbach filed a second petition against Maxion Wheels in the circuit court of Pettis

County on July 22, 2019 ("July 2019 Petition"), asserting a claim of retaliation that was

"part of a pattern and practice of [Maxion Wheels]" following her complaints to human

resources about the sexual harassment and sex-based discrimination she suffered at work.

 3
Maxion Wheels removed the second filed action to federal court on August 30, 2019

("Federal Case"). While the Federal Case was pending, Maxion Wheels did not assert an

affirmative defense or otherwise object on the basis of the similarity of the claims asserted

in the Federal Case and the instant case.

 The Federal Case was tried in the United States District Court for the Western

District of Missouri in September 2020. The jury found in favor of Maxion Wheels.

Judgment was entered in favor of Maxion Wheels on September 24, 2020 ("federal court

judgment").2

 On October 15, 2020, Maxion Wheels filed an amended answer ("Amended

Answer") in the instant case. The Amended Answer stated that it was being filed with

Steinbach's consent pursuant to Rule 55.33(a).3 The Amended Answer was identical to the

Maxion Wheel's Answer, except that the Amended Answer asserted the following

affirmative defense:

 Plaintiff's claims are barred by the doctrines of res judicata, claim preclusion
 and/or collateral estoppel based on the [federal court judgment] in [the
 Federal Case]. The parties in the Federal Case were the same as the parties
 in this case. In addition, Plaintiff's claims in the Federal Case and this case
 arise out of the same act, contract, transaction or occurrence, and, by
 exercising reasonable diligence, Plaintiff could have asserted the claims in
 this case in the Federal Case. Notably, all of the events that make up all of
 Plaintiff's claims occurred on or before August 31, 2018, before this case and
 the Federal Case were filed in court. In the Federal Case, Plaintiff alleged
 that Defendant retaliated against her for filing the charge of discrimination
 on which her Petition in this case is premised. Plaintiff conducted discovery

 2
 The federal court's judgment is dated September 24, 2019, but that date is plainly a scrivener's error.
 3
 Rule 55.33(a) allows amendment of an answer "at any time within thirty days after it is served," or if that
thirty-day period has expired, "by leave of court or by written consent of the adverse party." (Emphasis added.)
Though the Amended Answer represents that Steinbach consented to the filing of the Amended Answer, no written
consent appears in the record.
 All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

 4
 in the Federal Case regarding the allegations of sexual harassment and
 retaliation contained in her Petition in this case. Moreover, during the trial
 of the Federal Case, Plaintiff offered evidence regarding the sexual
 harassment and retaliation alleged in the Petition.

Steinbach did not file a responsive pleading to the Amended Answer.

 On November 30, 2020, forty-five days after the Amended Answer was filed,

Maxion Wheels filed a motion for summary judgment, suggestions in support, and a

statement of uncontroverted facts (collectively "Motion for Summary Judgment") in the

instant case. The Motion for Summary Judgment asserted that Maxion Wheels was entitled

to judgment in its favor as a matter of law because the claims asserted in the instant case

are barred by the doctrine of res judicata, given that:

 (1) the parties in the [instant case] and the Federal Case are identical; (2) the
 claims in the [instant case] and the Federal Case arise out of the same group
 of operative facts or are part of the same transaction or series of transactions;
 and (3) a final judgment has been rendered in the Federal Case.

 Steinbach filed suggestions in opposition and responses to the statement of

uncontroverted facts (collectively "Suggestions in Opposition") on December 30, 2020.

Steinbach argued in her Suggestions in Opposition that Maxion Wheels had waived the

defense of res judicata by consenting and acquiescing to separate trials in the instant case

and the Federal Case. Steinbach also argued that the claims asserted in the instant case are

not the same as the claims adjudicated in the Federal Case.

 On January 11, 2021, Maxion Wheels filed a reply in support of its Motion for

Summary Judgment ("Reply Suggestions") in which it argued that waiver of the affirmative

defense of res judicata is an affirmative avoidance, and that Steinbach was barred from

 5
raising the affirmative avoidance to defend the Motion for Summary Judgment because

Steinbach failed to file a reply to the Amended Answer within thirty days of its filing.

 Two days later, January 13, 2021, Steinbach filed a motion to file a reply out of time

("Motion to File a Reply"). The Motion to File a Reply argued that, pursuant to Rule

55.33(a), Steinbach should be allowed leave to file a reply out of time because she had not

believed the Amended Answer required a response since it did not include a counterclaim,

and because she had not believed she needed to oppose the affirmative defense of res

judicata by pleading an affirmative avoidance. Maxion Wheels opposed Steinbach's

Motion to File a Reply, arguing that Rule 44.01(b) applied, not Rule 55.33(a), to determine

whether Steinbach should be afforded leave to file a reply out of time. Maxion Wheels

argued that Rule 44.01(b) only allowed the trial court to extend Steinbach's time to file a

reply upon a showing of excusable neglect, and that Steinbach's Motion to File a Reply did

not demonstrate excusable neglect.

 The trial court entered a judgment denying Steinbach's Motion to File a Reply and

granting Maxion Wheels' Motion for Summary Judgment on April 1, 2021 ("Judgment").

The trial court concluded that Steinbach's Motion to File a Reply to assert the affirmative

avoidance of acquiescence should be denied because Rule 44.01(b) required Steinbach to

establish excusable neglect and "[n]one has been shown." The Judgment then found that

Steinbach admitted in her October 2018 charge of discrimination that the discrimination

and retaliation therein asserted were related to the complaints she made in her February

2018 charge of discrimination. Thus, the Judgment concluded that the sexual harassment,

discrimination, and retaliation claims in the instant case and in the Federal Case were

 6
connected so that, by filing separate suits, Steinbach improperly split her claims, requiring

the entry of summary judgment in favor of Maxion Wheels in the instant case as a matter

of law.

 Steinbach appeals.

 Analysis

 Steinbach asserts two points on appeal. In the first, she argues that the trial court

erred in granting Maxion Wheels' Motion for Summary Judgment because she did not split

her claims by filing the instant case and the Federal Case, and even if she did, Maxion

Wheels acquiesced to splitting the claims. In the second point on appeal, Steinbach argues

that the trial court erred in denying her Motion to File a Reply as to permit her to file the

affirmative avoidance of waiver or acquiescence.

 Because any error in denying Steinbach's Motion to File a Reply is rendered moot

unless we affirm the trial court's determination that Steinbach split her claims by filing the

instant case and the Federal Case, we necessarily begin with a discussion of the merits of

Steinbach's first point on appeal.

Point 1: The instant case and the Federal Case were separate actions arising out of the
same transaction, as the aggregate of the facts and circumstances constituting the
foundation for the claims asserted in both actions are the same

 Steinbach's first point on appeal has two parts. First, Steinbach argues that because

the instant case sought relief for discrimination and retaliation for a different time period

than the Federal Case, it was error to grant summary judgment because Steinbach did not

split her claims for discrimination, harassment, and retaliation. Second, Steinbach argues

 7
that even if she split her claims by filing the instant case and the Federal Case, it was error

to grant summary judgment because Maxion Wheels acquiesced to splitting the claims.4

 We review a trial court's grant of a motion for summary judgment de novo. ITT

Com. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993),

superseded by rule on other grounds as recognized in Green v. Fotoohighiam, 606 S.W.3d

113 (Mo. banc 2020). Summary judgment is appropriate if there is no genuine issue as to

any material fact so that judgment in favor of the moving party is appropriate as a matter

of law. Rule 74.04(c)(6). Where, as here, the movant is the defending party relying on an

affirmative defense, summary judgment is only appropriate if the movant establishes "that

there is no genuine dispute as to the existence of each of the facts necessary to support the

movant's properly-pleaded affirmative defense." ITT Com. Fin. Corp., 854 S.W.2d at 381

(emphasis omitted).

 Maxion Wheels' Amended Answer asserted the affirmative defenses of "res

judicata, claim preclusion and/or collateral estoppel." "Res judicata, or claim preclusion,

'precludes relitigation of a claim formerly made,' and 'every point properly belonging to

the subject matter of litigation and which the parties, exercising reasonable diligence, might

have brought forward at the time.'" Olofson v. Olofson, 625 S.W.3d 419, 427-28 (Mo. banc

2021) (emphasis added) (quoting Chesterfield Vill., Inc. v. City of Chesterfield, 64 S.W.3d

315, 318 (Mo. banc 2002); King Gen. Contractors, Inc. v. Reorganized Church of Jesus

 4
 Steinbach's first point on appeal is multifarious in violation Rule 84.04(d) in that it argues alternative bases
for claiming that the trial court's entry of summary judgment was erroneous. Estes as Next Friend for Doe v. Bd. of
Trs. of Mo. Pub. Entity Risk Mgmt. Fund, 623 S.W.3d 678, 703-04 n.21 (Mo. App. W.D. 2021). Multifarious points
on appeal are subject to dismissal, but we prefer to decide appeals on their merits if we are able to discern the
substance of the argument. Id. We have elected to do so here.

 8
Christ of Latter Day Saints, 821 S.W.2d 495, 501 (Mo. banc 1991)). "Unlike res judicata,

collateral estoppel, also called issue preclusion, 'operates only as to issues previously

litigated but not as to matters not litigated in the prior action though such might properly

have been determined.'" Id. at 428 (emphasis added) (quoting King Gen. Contractors, Inc.,

821 S.W.2d at 500). In their effect, res judicata (claim preclusion) and collateral estoppel

(issue preclusion) operate to prevent relitigation of a previously adjudicated claim or issue

in a subsequently filed action. Thus, "the doctrines of collateral estoppel and res judicata

apply only in a second, subsequent lawsuit." Id. (emphasis added) (quoting State ex rel.

Cullen v. Harrell, 567 S.W.3d 633, 641 n.5 (Mo. banc 2019)).

 Maxion Wheels' Motion for Summary Judgment did not rely on collateral estoppel

(issue preclusion). Instead, it relied only on the affirmative defense of res judicata (claim

preclusion), and alleged that Steinbach's claims in the instant case "are barred by the

doctrine of res judicata because (1) the parties in the [instant case] and the Federal Case

are identical; (2) the claims in the [instant case] and the Federal Case arise out of the same

group of operative facts or are part of the same transaction or series of transactions; and (3)

a final judgment has been rendered in the Federal Case."

 In addition to requiring a prior final judgment and a subsequently filed suit, res

judicata requires the presence of four identities: "1) identity of the thing sued for; 2) identity

of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of

the quality of the person for or against whom the claim is made." Suppes v. Curators of

Univ. of Mo., 613 S.W.3d 836, 848-49 (Mo. App. W.D. 2020) (quoting Kesler v. Curators

of Univ. of Mo., 516 S.W.3d 884, 890 (Mo. App. W.D. 2017)). Here, there is no debate

 9
that the persons and parties in the instant case and the Federal Case are the same, and that

the quality of the person for or against whom the claims are made is the same. And there

is no debate that the causes of action asserted in the instant case and the Federal Case are

substantively the same, albeit for different time periods. The debate arises over whether

there is an identity of the thing sued for in the instant case and the Federal Case.

 "To determine whether a claim is barred by a former judgment, the question is

whether the claim arises out of the same 'act, contract or transaction.'" Chesterfield Vill.,

Inc., 64 S.W.3d at 318-19 (quoting Grue v. Hensley, 210 S.W.2d 7, 10 (Mo. 1948). If "the

underlying facts are the same, res judicata bars re-litigation of the matter whether upon the

same or different cause of action, claim, demand, ground or theory." Roy v. MBW Constr.,

Inc., 489 S.W.3d 299, 305 (Mo. App. W.D. 2016) (quoting State ex rel. City of Blue

Springs, Mo. v. Schieber, 343 S.W.3d 686, 689 (Mo. App. W.D. 2011)).

 When a valid and final judgment rendered in an action extinguishes the
 plaintiff's claim pursuant to the rules of merger or bar . . . , the claim
 extinguished includes all rights of the plaintiff to remedies against the
 defendant with respect to all or any part of the transaction, or series of
 connected transactions, out of which the action arose.

RESTATEMENT (SECOND) OF JUDGMENTS section 24(1) (AM. L. INST. 1982) (cited with

approval in Chesterfield Vill., Inc., 64 S.W.3d at 319 n.6). "'The word "transaction" has a

broad meaning and includes all the facts and circumstances out of which an injury arose.'"

HFC Invs., LLC v. Valley View State Bank, 361 S.W.3d 450, 457 (Mo. App. W.D. 2012)

(quoting Bagsby v. Gehres, 139 S.W.3d 611, 615 (Mo. App. E.D. 2004)).

 The "identity of the thing sued for" required to establish res judicata in a

subsequently filed action after a prior adjudication is thus aligned with the prohibition

 10
against claim splitting.5 Chesterfield Vill., Inc., 64 S.W.3d at 318 ("Res judicata, or its

modern term, claim preclusion, prohibits 'splitting' a claim or cause of action."). "A single

cause of action may not be split and filed or tried piecemeal." G.B. v. Crossroads Acad.-

Cent. St., 618 S.W.3d 581, 591 (Mo. App. W.D. 2020). "'Claims that could have been

raised by a prevailing party in the first action are merged into, and are thus barred by, the

first judgment." Roy, 489 S.W.3d at 305 (quoting Chesterfield Vill., Inc., 64 S.W.3d at

318).

 A cause of action is single and may not be split if either: (1) the "separate actions

brought arise out of the same act, contract or transaction;" or (2) "the parties, subject matter

and evidence necessary to sustain the claim are the same in both actions." G.B., 618

S.W.3d at 591-92 (quoting Roy, 489 S.W.3d at 305). The term "transaction" is broadly

interpreted to mean "the aggregate of all the circumstances which constitute the foundation

for a claim," and "also includes all of the facts and circumstances out of which an injury

arose." Id. at 592 (quoting Roy, 489 S.W.3d at 305). If, however, the plaintiff brings

"separate and distinct causes of action separately," the plaintiff has not violated the

prohibition against claim splitting, even if the causes of action arise out of the same

transaction. Id. (quoting Old Republic Nat'l Title Ins. Co. v. Cox, 453 S.W.3d 780, 788

(Mo. App. W.D. 2014)). Generally, the plaintiff's causes of action are separate and distinct

if "the parties are different, . . . the claims arise from different acts or circumstances, or

[the] evidence needed to sustain the actions is different." McCrary v. Truman Med. Ctr.,

 5
 "The rule against splitting a cause of action applies only where the several causes of action are between the
same parties." Welch v. Contreras, 174 S.W.3d 53, 56 (Mo. App. W.D. 2005) (quoting Lee v. Guettler, 391 S.W.2d
311, 313 (Mo. 1965)).

 11
Inc., 943 S.W.2d 695, 697 (Mo. App. W.D. 1997) (citations omitted). "Whether a plaintiff

is seeking to improperly split a cause of action depends on the 'ultimate facts' underlying

separate claims, not on the 'evidentiary details.'" HFC Invs., LLC, 361 S.W.3d at 457

(citing Kesterson v. State Farm Fire & Cas. Co., 242 S.W.3d 712, 716 (Mo. banc 2008)).

 The trial court found the claims in the instant case and in the Federal Case were

improperly split. The trial court noted that the October 2018 charge of discrimination

alleged that the conduct therein complained of was a continuing course of action related to

the February 2108 charge of discrimination, which was incorporated into the October 2018

charge of discrimination by reference. The trial court found that the retaliation about which

Steinbach complained in the October 2018 charge of discrimination was inseparable from

the course of conduct that gave rise to the retaliation complained of in the February 2018

charge of discrimination. Though the specific acts of retaliation identified in the first and

second charges of discrimination occurred at different times, they all arose from the same

employment relationship complained of by Steinbach as discriminatory and hostile, and

from the same efforts by Steinbach to report her employer's discriminatory conduct. In

short, the trial court found that the same ultimate facts supported the claims asserted in the

instant case and the Federal Case, requiring the claims to be asserted in the same action.

Though the trial court was cognizant of the fact that employment discrimination claims

must first be submitted through an administrative process resulting in a right-to-sue letter,

it found that nothing prevented Steinbach from moving for leave to amend the petition in

the instant case to address the second right-to-sue letter she received after filing the October

 12
2018 charge of discrimination.6 The trial court also found that Steinbach could have asked

the federal court to remand the Federal Case to be joined with the instant case pursuant to

Rule 55.34, or that she could have removed the instant case to the federal court to be joined

with the Federal Case.

 Steinbach does not challenge the trial court's findings that procedural avenues

existed that would have permitted her to assert the retaliation claims raised in the October

2018 charge of discrimination in the instant case. Steinbach instead challenges her

obligation to do so, and alleges that because the claims of discrimination and retaliation in

the instant case and the Federal Case involve different incidents of retaliation that occurred

at different times, they are separate and distinct claims. We disagree.

 The claims asserted in the instant case and the Federal Case arose out of the same

facts and circumstances: the harassment and discrimination Steinbach endured at work and

the retaliation to which she was subjected following her complaints to human resources

and the MCHR. Steinbach's October 2018 Petition in the instant case sought relief for

discrimination and harassment experienced from May 2016 through September 2017, and

for retaliation, continued discrimination, and harassment suffered from September 2017

through January 2018. Steinbach's October 2018 charge of discrimination (filed the day

after the October 2018 Petition) "incorporated fully . . . by reference" the allegations set

forth in the February 2018 charge of discrimination, and then alleged additional retaliation

 6
 There is a recognized exception to the prohibition against claim splitting where procedural bars prevent a
plaintiff from bringing all claims that should have been asserted together in the same action. RESTATEMENT
(SECOND) OF JUDGMENTS section 26(1)(c), cmt. c (noting that claim splitting does not apply "[w]here formal barriers
exist[] against full presentation of [a] claim in first action"). Steinbach has not argued that this exception applies.

 13
by Maxion Wheels as a part of a "pattern and practice of retaliation and discrimination [that

became] evident after [she] spoke up about the hostile environment in which [she] worked."

As evidenced by Steinbach's incorporation of the February 2018 charge of discrimination

by reference, the October 2018 charge of discrimination amounted to little more than a

complaint regarding new examples of retaliation stemming from Steinbach's previous

reports of discrimination. Consistent with this fact, Steinbach's July 2019 Petition alleged

a continuation of the "pattern and practice" of retaliation by Maxion Wheels already

identified in the October 2018 Petition. The claim of retaliation ultimately litigated in the

Federal Case necessarily arose out of the same acts, conduct, and transactions giving rise

to the instant case as both cases depended on the same ultimate facts. See HFC Invs., LLC,

361 S.W.3d at 457 ("Whether a plaintiff is seeking to improperly split a cause of action

depends on the 'ultimate facts' underlying separate claims, not on the 'evidentiary details.'");

see also RESTATEMENT (SECOND) OF JUDGMENTS section 24, cmt. d (observing that

"[w]hen a defendant is accused of . . . acts which though occurring over a period of time

were substantially of the same sort and similarly motivated . . . [t]he events constitute but

one transaction or a connected series"). The trial court did not err in concluding that

Steinbach violated the prohibition against claim splitting by filing both the instant case and

the Federal Case.

 In the second part of her first point on appeal, Steinbach argues that, if we conclude

that Steinbach's filing of the July 2019 Petition constituted claim splitting, we should

conclude that Maxion Wheels acquiesced to splitting the claim by removing the July 2019

Petition to federal court and permitting the Federal Case to be separately tried without

 14
objection. As we discuss, infra, Steinbach is correct that the general rule prohibiting claim

splitting is subject to exceptions, and that one such exception is a defendant's acquiescence.

However, Steinbach's contention begs the question that is at issue in her second point on

appeal.

 Waiver of an affirmative defense is an affirmative avoidance. See Billings Mut. Ins.

Co. v. Cameron Mut. Ins. Co., 229 S.W.3d 138, 143 (Mo. App. S.D. 2007) (recognizing

that waiver is an affirmative avoidance). "An avoidance is 'an affirmative defense to an

affirmative defense.'" Rosales v. Benjamin Equestrian Ctr., LLC, 597 S.W.3d 669, 683

(Mo. App. W.D. 2019) (quoting Allen v. Titan Propane, LLC, 484 S.W.3d 902, 905 (Mo.

App. S.D. 2016)). Rule 55.01 requires that "an affirmative avoidance to any matter alleged

in a preceding pleading must be pleaded." See also Rule 55.08 ("In pleading to a preceding

pleading, a party shall set forth all applicable affirmative defenses and avoidances . . . . A

pleading that sets forth an affirmative defense or avoidance shall contain a short and plain

statement of the facts showing that the pleader is entitled to the defense or avoidance.").

The failure to plead an affirmative avoidance in a reply results in its waiver. Billings Mut.

Ins. Co., 229 S.W.3d at 143. Steinbach was required to file a reply to assert the affirmative

avoidance of waiver within thirty days of the filing of Maxion Wheels' Amended Answer.

See Rule 55.25(b).

 Steinbach acknowledges that she did not file a timely reply in response to the

Amended Answer's assertion of the affirmative defense that Steinbach's "claims are barred

by the doctrines of res judicata, claim preclusion and/or collateral estoppel based on the

judgment entered [in the Federal Case] on September 24, 20[20]." Because Steinbach did

 15
not timely plead waiver as an affirmative avoidance, and because Steinbach's Motion to

File a Reply was not granted, the Judgment did not address the merits of the affirmative

avoidance of acquiescence in the context of contesting the Motion for Summary Judgment.

Thus, the second part of Steinbach's first point on appeal is not subject to appellate review

as it asks us to review on the merits an issue that the trial court never addressed See Kerr

v. Curators of Univ. of Mo., 512 S.W.3d 798, 815 (Mo. App. W.D. 2016) ("The trial court's

authority is limited to such questions as are presented by the parties in their pleadings.")

(quoting McClain v. Hartley, 320 S.W.3d 183, 185 (Mo. App. E.D. 2010)).

 Point One is denied.

 That does not end our inquiry, however. The Judgment denied Steinbach's Motion

to File a Reply, which sought to assert the affirmative avoidance that Maxion Wheels

waived, consented, or acquiesced to Steinbach splitting her claims in the instant case and

the Federal Case. Had that affirmative avoidance been permissibly asserted in a late filed

reply, and had the affirmative avoidance been deemed by the trial court to have merit, or

to have identified genuine issues of material fact in dispute, then the entry of summary

judgment would not have been proper. We turn, then, to the merits of Steinbach's second

point on appeal.

Point 2: Rule 44.01(b) applied to determine whether Steinbach's Motion to File a Reply
should be granted, but the trial court abused its discretion by concluding as to the
required demonstration of excusable neglect that none was shown

 Steinbach argues in her second point on appeal that the trial court abused its

discretion in denying her Motion to File a Reply. Steinbach specifically argues that the

trial court's reliance on Rule 44.01(b) to deny the Motion to File a Reply was improper,

 16
and that the trial court should have applied Rule 55.33(a), which directs courts to freely

allow leave to amend pleadings out of time "when justice so requires." Affording

Steinbach's second point on appeal its broadest intendment, Steinbach also generally

asserts that it was an abuse of discretion to deny the Motion to File a Reply.

 "We review the trial court's ruling denying [a party's motion for] leave to file a

response out of time for abuse of discretion." Erickson v. Erickson, 419 S.W.3d 836, 848

(Mo. App. S.D. 2013) (quoting Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569,

575 (Mo. App. S.D. 2011)). In order to reverse a judgment, we must conclude that the trial

court's denial of a motion for leave to file a response out of time was both an abuse of

discretion and "materially affect[ed] the merits of the action." Rule 84.13(b).

 Steinbach's Motion to File a Reply alleged that it was subject to Rule 55.33(a). Rule

55.33(a) addresses amendments to pleadings and provides that leave of court to amend a

pleading "shall be freely given when justice so requires."

 The trial court denied Steinbach's Motion to File a Reply, but relied on Rule

44.01(b), and not Rule 55.33(a), to do so. Rule 44.01(b) provides:

 When by these rules . . . an act is required or allowed to be done at or within
 a specified time, the court for cause shown may at any time in its discretion
 . . . upon notice and motion made after the expiration of the specified period
 permit the act to be done where the failure to act was the result of excusable
 neglect.

With respect to the required showing of excusable neglect, the Judgment concluded that

"[n]one has been shown."

 Steinbach argues that the trial court's application of Rule 44.01(b)'s "excusable

neglect" standard was erroneous and that the trial court should have instead applied Rule

 17
55.33(a)'s "when justice so requires" standard. We disagree. The applicability of court

rules is an exercise in rule interpretation, which relies on similar principles to those

employed to interpret statutes. Olofson, 625 S.W.3d at 434. A rule's plain language

controls. Id.

 The plain language of Rule 44.01(b) reflects an intent that the rule will apply when

a party seeks an enlargement of time to perform an act required by another rule to be done

within a certain time period. The plain language of Rule 55.33(a), on the other hand,

reflects an intent for the rule to apply only when permission is sought to amend a

previously filed pleading. Steinbach's Motion to File a Reply did not seek leave to amend

a previously filed pleading. Instead, Steinbach's Motion to File a Reply sought leave to

file a new pleading--a reply--outside the time period required by the combined reading of

Rules 55.01, 55.08, and 55.25(b). As such, Rule 44.01(a) described the relevant standard

for determining whether to grant or deny Steinbach's Motion to File a Reply.

 We acknowledge Keehn v. Ruzicka Electric & Sons, Inc., 251 S.W.3d 388 (Mo.

App. E.D. 2008), on which Steinbach relies to support her argument that a party may seek

leave to amend a previously filed pleading in lieu of filing a reply in order to assert an

affirmative avoidance. In Keehn, a defendant's answer asserted that the statute of

limitations barred the plaintiffs' lawsuit. Id. at 390. In responding to a subsequently filed

motion for summary judgment based on the statute of limitations defense, the plaintiff

alleged fraudulent concealment, an unpled affirmative avoidance. Id. at 389. On appeal,

the Eastern District concluded that, because plaintiffs' pleadings did not mention fraudulent

concealment, the affirmative avoidance was waived. Id. at 390-91. The Eastern District

 18
explained its decision: "Despite [the defendant's] answer alleging that the statute of

limitations barred the lawsuit, the [plaintiffs] filed no responsive pleading, nor did they

amend their petition." Id. (emphasis added) (citing Rule 55.01; Rule 55.33); see also

Billings Mut. Ins. Co., 229 S.W.3d at 143 ("[The plaintiff's] failure to file a reply waived

the affirmative avoidances . . . unless either (1) the trial court permitted the pleadings to be

amended to include the defense, which it did not, or (2) the issue was tried by implied or

actual consent of the parties."); cf. Rosales, 597 S.W.3d at 684-85 (concluding that, while

the plaintiff failed to file a reply asserting an affirmative avoidance of negligence pursuant

to Rule 55.08, a reply would have "merely restate[d] the affirmative allegations of

negligence already set forth in the plaintiff's petition" so that "[i]nsisting on a duplicative

filing of an already asserted claim in order to demonstrate technical compliance with Rule

55.08 would not further the purpose of isolating and notifying the parties of the issues").

 The suggestion in Keehn and Billings that a previously filed pleading may be

amended to assert an affirmative avoidance in lieu of filing a reply is confusing in light of

the plain language of Rules 55.01, 55.08 and 55.25(b) directing that an affirmative

avoidance must be filed in a responsive pleading within thirty days. See Jaycox v. Brune,

434 S.W.2d 539, 547 (Mo. 1968) ("Perhaps one or more of our rules should be amended,

but in the meantime and in order to clarify this rather confusing situation we hold now that

a reply should be filed when a plaintiff desires to avoid or affirmatively attack new and

affirmative matter alleged in the answer. In that reply he should distinctly allege his

grounds of avoidance."), abrogated on other grounds by State ex rel. Leonardi v. Sherry,

137 S.W.3d 462 (Mo. banc 2004). However, any confusion contributed to by Keehn and

 19
Billings is largely academic. Though Steinbach's Motion to File a Reply referred to the

rule applicable to amending a pleading, the substance of the motion did not seek to amend

a previously filed pleading, and instead plainly sought leave to file a new pleading (a reply)

outside the time permitted to do so. Steinbach's Motion to File a Reply thus belies reliance

on the suggestion in Keehn and Billings that an affirmative avoidance can be asserted in an

amended pleading in lieu of a reply. Moreover, the suggestion in Keehn and Billings that

an affirmative avoidance can be asserted in an amended pleading in lieu of a reply cannot

be read to permit the filing of an amended pleading to assert an affirmative avoidance out

of time--that is, after the time to assert the affirmative avoidance has passed. Once the time

to assert an affirmative avoidance described in Rule 55.25(b) has passed, a trial court's

authority to expand the time to assert the affirmative avoidance is controlled by Rule

44.01(b). See Holmes v. Union Pac. R.R. Co., 617 S.W.3d 853, 859 (Mo. banc 2021)

(noting that a trial court's authority to expand the time period for filing certain pleadings is

addressed by Rule 44.01(b)).

 We therefore reject Steinbach's contention that Rule 55.33(a) described the standard

to be applied by the trial court when ruling on her Motion to File a Reply. However, we

must nonetheless determine whether the trial court's denial of the Motion to File a Reply

pursuant to Rule 44.01(b) was an abuse of discretion. Specifically, we must determine

whether the Judgment's finding that "[n]one has been shown" in reference to the required

showing of excusable neglect was in error.

 Rule 44.01(b) does not define "excusable neglect." The dictionary definition of the

term is:

 20
 A failure--which the law will excuse--to take some proper step at the proper
 time (esp. in neglecting to answer a lawsuit) not because of the party's own
 carelessness, inattention, or willful disregard of the court's process, but
 because of some unexpected or unavoidable hindrance or accident or because
 of reliance on the care and vigilance of the party's counsel or on a promise
 made by the adverse party.

BLACK'S LAW DICTIONARY 1244 (11th ed. 2019). Missouri courts have similarly

concluded that excusable neglect exists if "the failure to act [is] not because of the party's

own carelessness, inattention, or willful disregard of the court's process, but because of

some unexpected or unavoidable hindrance or accident." Holmes, 617 S.W.3d at 860

(quoting Irvin v. Palmer, 580 S.W.3d 15, 22 (Mo. App. E.D. 2019)). In other words,

"[e]xcusable neglect is an action attributable to mishap and not the result of indifference or

deliberate disregard.'" Id. (quoting State ex rel. Mylan Bertek Pharms., Inc. v. Vincent, 561

S.W.3d 68, 72 (Mo. App. E.D. 2018)). The question then is whether Steinbach's failure to

file a reply within thirty days of Maxion Wheels' Amended Answer as required by Rule

55.25(b) was a result of indifference or deliberate disregard, or of mishap or accident.

 Courts have rejected claims of excusable neglect when the movant offered no

explanation for the failure to file the response timely; where the motion's allegations of

excusable neglect were not consistent with the party's behavior during the course of the

litigation; or where the motion was filed an extended period of time after the time for

response had expired. See Irvin, 580 S.W.3d at 22-23 (where motion stated only that a

timely response was not filed due to counsel's "professional schedule and certain

obligations"); Inman, 347 S.W.3d at 576-77 (where motion contained no explanation for

the failure to timely file a response to a motion for summary judgment); Manor Square Inc.

 21
v. Heartthrob of Kansas City, Inc., 854 S.W.2d 38, 43 (Mo. App. W.D. 1993) (where

motion contained no explanation of excusable neglect, the motion was filed nearly fifteen

months after time for response had expired, and the movant deployed several procedural

tactics to delay trial over the course of two years of the litigation). A claim of excusable

neglect has also been rejected when the record indicated that the movant acted carelessly

and with a deliberate disregard for the judicial process. See Holmes, 617 S.W.3d at 860-

61 (where movant's counsel knew that the movant would have to be appointed personal

representative, and falsely claimed movant had already been appointed; movant executed

medical authorizations purporting to be the personal representative; movant took no action

to be appointed personal representative after a motion to dismiss was filed on that basis;

and movant did not timely seek appointment after the trial court extended the deadline to

allow her to do so). However, excusable neglect has been found when a motion for

enlargement of time explained that the movant mistakenly overlooked the need to respond

because the motion which required response was combined with other motions that did not

require response. See State ex rel. Mylan Bertek Pharms., Inc., 561 S.W.3d at 72 (motion

explained that the movant "accidentally and inadvertently failed to file" a timely response

because the motion to transfer was combined with other motions that did not require

response).

 Though Steinbach's Motion to File a Reply referred to the wrong rule, it nonetheless

explained why she sought to file a reply to the Amended Answer out of time. Similar to

State ex rel. Mylan Bertek Pharmaceuticals, Inc., Steinbach's explanation falls into the

category of accidentally and inadvertently overlooking the need to respond:

 22
 2. [Steinbach] seeks to file a Reply out of an abundance of caution in
 response to the assertion in [Maxion Wheels' Reply Suggestions] that such a
 Reply is necessary before the Court can consider the waiver, consent,
 acquiescence, and jurisdictional arguments in [Steinbach's] Suggestions in
 Opposition. [Maxion Wheels] argues that [Steinbach] has waived [her]
 arguments in a Reply as an affirmative avoidance to Defendant's Affirmative
 Defense No. 15[, alleging that Steinbach's claims in the instant case "are
 barred by the doctrines of res judicata, claim preclusion and/or collateral
 estoppel" based on the Federal Case and resulting federal court judgment].

 ....

 6. Here, there is a hardship to [Steinbach] if leave to file the Reply is denied
 and if the Court agrees with [Maxion Wheels] that such a Reply was
 necessary before the Court can consider whether [Maxion Wheels'] actions
 that led to what [Maxion Wheels] now claims is a splitting of two cases that
 should have been tried together, preclude [Maxion Wheels'] recently filed res
 judicata affirmative defense.

 7. [Steinbach] did not file a Reply pleading earlier because [Steinbach]
 believed that, because [Maxion Wheels] made no Counterclaim necessitating
 a Reply, under Rule 55.09 the averments made in [Maxion Wheels']
 Amended Answer would be taken as denied and that the arguments in
 opposition to [Maxion Wheels' affirmative defense of "res judicata, claim
 preclusion and/or collateral estoppel] did not need to be pled as affirmative
 avoidances.

Moreover, Steinbach filed her Motion to File a Reply promptly just two days after Maxion

Wheels filed its Reply Suggestions claiming she had waived the affirmative avoidance of

acquiescence; a month and a half after Maxion Wheels filed its Motion for Summary

Judgment identifying claim splitting as the urged legal basis for judgment; and three

months after Maxion Wheels filed its Amended Answer. The trial court's conclusion that,

with respect to the required showing of excusable neglect, "[n]one has been shown," was

in error.

 Our conclusion is bolstered by other circumstances in this case. Maxion Wheels

did not file an Amended Answer until October 15, 2020, three weeks after entry of the
 23
federal court judgment that disposed of Steinbach's July 2019 Petition, and more than two

and a half years after Steinbach filed her February 2018 Petition. The Amended Answer,

which varied from the original Answer due only to the assertion of the affirmative defenses

of res judicata and collateral estoppel, could not have been filed without leave of court or

Steinbach's written consent. Rule 55.33(a). Neither of these required predicates to filing

an amended pleading is established by the record. Though the Amended Answer

summarily states that it was filed with Steinbach's consent, Steinbach's written consent is

not reflected on the Amended Answer, and is not otherwise reflected in the record. That

calls into question whether Maxion Wheels' newly asserted affirmative defense of res

judicata was "properly pled" as to support the entry of summary judgment. ITT Com. Fin.

Corp., 854 S.W.2d at 381 (Where summary judgment movant is a defending party relying

on an affirmative defense, summary judgment is only appropriate if the movant establishes

"that there is no genuine dispute as to the existence of each of the facts necessary to support

the movant's properly-pleaded affirmative defense") (emphasis omitted and added). And

it calls into question the fairness of denying Steinbach leave to file a reply out of time

sought a mere three months after the Amended Answer was filed when, according to

Maxion Wheels, Steinbach extended Maxion Wheels the professional courtesy of

consenting to the filing of Amended Answer two and a half years after the February 2018

Petition was filed.

 This inequity is magnified when the Amended Answer is examined more closely.

The Amended Answer asserted that the affirmative defenses of res judicata and collateral

estoppel could not have been filed before the Federal Case was fully adjudicated, thus

 24
"explaining" why the defenses were not earlier raised. That is true. See Cornerstone

Mortg., Inc. v. Ponzar, 619 S.W.3d 524, 535 (Mo. App. E.D. 2021) ("Res judicata and

collateral estoppel apply to final judgments and preclude re-litigation of the claims or issues

decided therein in subsequent causes of action." (quoting State ex rel. Koster v. Didion

Land Project Assoc. LLC, 469 S.W.3d 914, 918 (Mo. App. E.D. 2015)); see also

RESTATEMENT (SECOND) OF JUDGMENTS section 19 ("A valid and final personal judgment

rendered in favor of the defendant bars another action by the plaintiff on the same claim.");

RESTATEMENT (SECOND) OF JUDGMENTS section 13 ("The rules of res judicata are

applicable only when a final judgment is rendered.").

 However, Maxion Wheels' Motion for Summary Judgment, filed forty-five days

after the Amended Answer was filed (notably, shortly after the time permitted for

Steinbach to file a reply expired), did not rely on collateral estoppel. And though the

Motion for Summary Judgment purported to rely on the asserted affirmative defense of res

judicata, it in fact relied on the narrower doctrine of claim splitting based on an argument

that the claims asserted in the Federal Case could have been asserted in the instant case,

and vice versa. The Motion for Summary Judgment even noted in a footnote that "[r]es

judicata encompasses the doctrine of claim splitting." Yet, "claim splitting" as a separate

doctrine encompassed by res judicata is not referred to in the Amended Answer.

 That is problematic here. It is true that res judicata and collateral estoppel are not

ripe for assertion as affirmative defenses until a prior adjudication bars relitigation of a

claim or issue in a subsequent case. It is true that "res judicata and splitting a cause of

action are closely related [doctrines] because both are designed to prevent a multiplicity of

 25
lawsuits." Briscoe v. Walsh, 445 S.W.3d 660, 664 (Mo. App. E.D. 2014) (quoting Burke

v. Doerflinger, 663 S.W.2d 405, 407 (Mo. App. E.D. 1983)). And it is true that in the

context of res judicata, which necessarily involves a subsequently filed action after a prior

adjudication, the concept of claim splitting aligns with the required identity of the thing

sued for.

 However, where actions are simultaneously pending, claim splitting is a distinct

(and narrower) affirmative defense that is ripe for immediate assertion, even though the

broader defense of res judicata cannot be asserted until there is a prior adjudication. Claim

splitting "generally applies to suits filed after the conclusion of a prior suit, [but] the

doctrine also applies to actions pending simultaneously." G.B., 618 S.W.3d at 591 n.8; see

also HFC Invs., LLC, 361 S.W.3d at 457 n.6. If a defendant does not object on the basis

of claim splitting while simultaneous actions are pending, the doctrine becomes subject to

the exception of acquiescence:

 (1) When any of the following circumstances exists, the general [prohibition
 against claim splitting] does not apply to extinguish the claim, and part or all
 of the claim subsists as a possible basis for a second action by the plaintiff
 against the defendant:

 (a) The parties have agreed in terms or in effect that the plaintiff may split
 his claim, or the defendant has acquiesced therein . . . .

RESTATEMENT (SECOND) OF JUDGMENTS section 26. The Restatement comments explain

the rationale underlying this exception to the general rule:

 A main purpose of the general ruled state in section 24 is to protect the
 defendant from being harassed by repetitive actions based on the same claim.
 The rule is thus not applicable where the defendant consents, in express
 words or otherwise, to the splitting of the claim. . . .

 26
 Where the plaintiff is simultaneously maintaining separate actions based on
 parts of the same claim, and in neither action does the defendant make the
 objection that another action is pending based on the same claim, judgment
 in one of the actions does not preclude the plaintiff from proceeding and
 obtaining judgment in the other action. The failure of the defendant to
 object to the splitting of the plaintiff's claim is effective as an acquiescence
 in the splitting of the claim.

Id. at cmt. a. (emphasis added.) Illustration 1 describes an example that bears similarity to

the instant case:

 After a collision in which A suffers personal injuries and property damage,
 A commences in the same jurisdiction one action for his personal injuries
 and another for the property damage against B. B does not make known in
 either action his objection (usually called "other action pending") to A's
 maintaining two actions on parts of the same claim. After judgment for A
 for the personal injuries, B requests dismissal of the action for property
 damage on the ground of merger. Dismissal should be refused as B
 consented in effect to splitting the claim.

Id. at cmt. a, illustration 1.

 Given all of the circumstances in this case, including: that Steinbach's explanation

for not timely filing a reply qualifies as excusable neglect; that Steinbach's Motion for

Leave to Reply was not substantially late, particularly when calculated from the date the

Motion for Summary Judgment was filed and the doctrine of claim splitting was first

expressly raised; that there is no indication that Steinbach's failure to timely file a reply

was due to indifference or deliberate disregard for the judicial process; that there is a

question whether the narrower affirmative defense of claim splitting was pled at all since

the doctrine is not mentioned in the Amended Answer, and given the Amended Answer's

insistence that no defense could be asserted until after the Federal Case was fully

adjudicated; and that there is a question whether the newly asserted affirmative defenses in

 27
the Amended Answer were properly pled as the Amended Answer was filed without leave

of court and with no demonstrated written consent from Steinbach; we conclude that the

trial court erred when it concluded that no excusable neglect was shown supporting a Rule

44.01(b) enlargement of time to file a reply.

 Rule 84.13(b) precludes reversal of the Judgment on this basis unless we also

conclude that the trial court's error "materially affect[ed] the merits of the action." See also

Burns v. Granger, 613 S.W.3d 800, 803 (Mo. App. W.D. 2020) ("[W]e will find reversible

error only where an abuse of discretion is found and the [appellant] can demonstrate

prejudice." (quoting In Matter of D.N., 598 S.W.3d 108, 115-16 (Mo. banc 2020))).

 If Steinbach's reply had been permitted to be filed out of time, the trial court would

have been required to consider whether the affirmative avoidance of acquiescence, which

was raised in Steinbach's Suggestions in Opposition, foreclosed granting the Motion for

Summary Judgment, either as a matter of law or because genuine issues of material fact in

dispute were identified. Given our discussion, supra, addressing the exception to claim

splitting for acquiescence when simultaneous actions are pending, either outcome is a

possibility.7 The trial court's abuse of discretion in denying Steinbach' Motion to File a

Reply was thus prejudicial and requires the Judgment to be reversed.

 Point Two is granted.8

 7
 This Opinion does not address the ultimate merit of the affirmative avoidance of acquiescence, a matter
that remains to be determined by the trial court.
 8
 The Motion for Summary Judgment did not rely on the affirmative defense of collateral estoppel (issue
preclusion), and accordingly, the Judgment did not address the subject. See RESTATEMENT (SECOND) OF
JUDGMENTS section 27 ("When an issue of fact or law is actually litigated and determined by a valid and final
judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action
between the parties, whether on the same or a different claim.").

 28
 Conclusion

 The Judgment is reversed. This matter is remanded with instructions for the trial

court to enter an order granting Steinbach's Motion to File a Reply, with instructions for

the trial court to reconsider Maxion Wheels' Motion for Summary Judgment in light of

Steinbach's asserted affirmative avoidance of acquiescence, and for further proceedings

consistent with this Opinion.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 29